**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| REX ROSIJI, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 11-6469 |
|  | : |  |
| THE CITY OF PHILADELPHIA, | : |  |
| CHARLES H. RAMSEY, | : |  |
| ARIANE M. THOMAS, PSY.D., and | : |  |
| ANDREW T. WOLANIN, PSY.D., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**ROBERT F. KELLY, Sr. J.**                                                                      **MAY 9, 2012**

<u>**MEMORANDUM**</u>

Presently before the Court is Defendants City of Philadelphia ("City") and Commissioner Charles Ramsey's ("Ramsey") (collectively, "City Defendants") Motion to Dismiss the Amended Complaint, Defendant Andrew T. Wolanin, PSY.D.'s ("Wolanin") Motion to Dismiss Plaintiff's Amended Complaint, Defendant Ariane M. Thomas, PSY.D.'s ("Thomas") Motion to Dismiss Plaintiff's Amended Complaint, and the Responses and Replies thereto.  For the reasons set forth below, we will deny all of Defendants' Motions to Dismiss.

**I.      <u>FACTS</u>**

In June 2006, Plaintiff Rex Rosiji ("Rosiji"), a Philadelphia Police detective, was fired by the City for allegedly requesting and using military leave instead of vacation time for an absence from work in January 2006.  (Am. Compl. ¶ 1.)  In July 2006, in connection with the alleged use of military leave time, Rosiji was arrested and charged with the following: (1) theft by unlawful taking, 18 Pa.C.S.A. § 3921; (2) theft by deception, 18 Pa.C.S.A. § 3922; (3) receiving stolen

property, 18 Pa.C.S.A. § 3925; (4) securing the execution of documents by deception, 18

Pa.C.S.A. § 4111; and (5) unsworn falsification to authorities, and tampering with public records,

18 Pa.C.S.A. § 4911.  (Id. ¶ 12.)

On October 23, 2006, in the state court, the Honorable Marsha H. Neifield dismissed the

charges of theft by unlawful taking and receiving stolen property for lack of evidence.  (Id. ¶ 13.)

On December 7, 2007, a jury found Rosiji not guilty of the charges of theft by deception,

unsworn falsification to authorities, and tampering with public records.  (Id. ¶ 14.)  The charge of

securing the execution of documents by deception was nolle prossed.  (Id.)

Following the acquittal of all of the charges, and the City's refusal to reinstate him to his

prior position, Rosiji filed a grievance pursuant to the Collective Bargaining Agreement between

the City and the Fraternal Order of Police ("FOP").[1]  (Id. ¶ 17.)  In October 2008, Rosiji, the FOP

and the City settled the grievance by entering into a Settlement Agreement that Rosiji would be

reinstated as a Police Officer without back pay, "[p]rovided that the Grievant [Rosiji] is certified

under Municipal Police Officers' Education & Training Commission (MPOETC) rules and

regulations (including, but not limited to having any disqualifying criminal activity in the

intervening period) and is able to meet all other conditions of employment, including

certification by the medical evaluation unit."  (Id. ¶ 18.)  According to the Amended Complaint,

> the MPOETC conditions that Rosiji had to satisfy
> were that he pass a certification examination
> administered by MPOETC and be found to be
> psychologically capable to exercise appropriate

---

[1] FOP Lodge No. 5 is the exclusive bargaining agent for Philadelphia Police Officers.  (Am. Compl. ¶ 15.)  It has entered into a series of Collective Bargaining Agreements with the City.  (Id.)  A Collective Bargaining Agreement was in force between the FOP and the City that prohibited the termination of a police officer without just cause.  (Id. ¶ 16.)

> judgment or restraint in performing the duties of a
> police officer by a Pennsylvania licensed
> psychologist after a personal interview.

(Id. ¶ 20.)

After the effective date of the Settlement Agreement, but prior to Rosiji satisfying the required MPOETC conditions, he was employed by the City at a desk job at the 39th Police District with an annual base salary of $55,603.00.  (Id. ¶ 19.)  In January 2009, Rosiji took and passed the MPOETC certification examination.  (Id. ¶ 21.)  MPOETC requires that the results of the applicant's psychological evaluation be reported on a form supplied by MPOETC.  (Id. ¶ 22.) The first section of the MPOETC form is entitled "Interview and History" and directs the psychologist to provide a brief synopsis of the applicant's personal, educational, employment and criminal history.  (Id. ¶ 23.)

As part of the psychological evaluation, MPOETC mandates that the applicant take the Minnesota Personality Inventory-2 ("MMPI-2").  (Id. ¶ 24.)  MPOETC requires the scores of certain standard MMPI-2 scales and other supplemental scales considered relevant by the examining psychologist to be recorded in the section of the MPOETC form entitled "M.M.P.I. Personality Test."  (Id. ¶ 25.)  The section of the MPOETC entitled "Additional Test(s)" is used to report the results of any additional tests administered by the examining psychologist to the applicant.  (Id. ¶ 27.)

The final section of the MPOETC form asks the examining psychologist to express his or her professional opinion as to whether the applicant is or is not capable of exercising appropriate judgment and restraint to be certified as a Police Officer in Pennsylvania.  (Id. ¶ 28.)  It does not prescribe how the examining psychologist is to conduct the interview, what conclusions are to be

3

drawn from any particular combination of MMPI-2 scores or under what circumstances the examining psychologist should administer additional tests.  (Id. ¶ 29.)  The City requires the examining psychologist to use the same standardized process and methodology to evaluate all Police Officer applicants, whether applicants are a new hire or have previously served as a sworn Police Officer.  (Id. ¶ 30.)

The examining psychologist must assign a numerical value between 1 and 5 to the results of the applicant's MMPI-2 by completing an "MMPI Evaluation Sheet" according to guidelines contained in the "MMPI Interpretation Guide."  (Id. ¶ 31.)  For the interview, the examining psychologist must ask the applicant the series of questions set forth in a document entitled "Police Applicant Standardized Interview Format," record the answers on that form and assign a numerical value between 1 and 5 to each answer.  (Id. ¶ 32.)  The examining psychologist is required to assign a numerical value between 1 and 5 to eight specific traits listed on a document entitled "Psychological Evaluation Summary Sheet," divide the total value assigned to the eight traits by four and add the result of the value of the MMPI-2 calculated on the MMPI Evaluation Sheet.  (Id. ¶ 33.)  In the event that the resulting number is eight or higher, the examining psychologist is to indicate on the MPOETC form that the applicant is capable of exercising appropriate judgment and restraint to be certified as a Police Officer; otherwise the examining psychologist is to indicate that the applicant is not capable of exercising the appropriate judgment and restraint to be certified as a Police Officer.  (Id. ¶ 34.)

On February 4, 2009, Thomas interviewed Rosiji using the Police Applicant Standardized Interview Format.  (Id. ¶ 35.)  She evaluated the results of Rosiji's MMPI-2 according to the City's methodology for evaluating MMPIs.  (Id. ¶ 36.)  In response to questioning by Thomas

4

from the Police Applicant Standardized Interview Format, Rosiji related details of the events that led to the criminal charges previously brought against him which resulted in Thomas reducing the numerical value assigned to the trait of "Judgment/Common Sense." (Id. ¶¶ 37-38.) This reduction in numerical value resulted in a final value calculation of 7.75, a finding by Thomas that Rosiji is psychologically unfit to be a Police Officer. (Id. ¶ 39.)

On March 9, 2009, Wolanin interviewed Rosiji following the same process and methodology employed by Thomas. (Id. ¶¶ 40-41.) During the interview, Rosiji told Wolanin of the events leading to his criminal charges resulting in Wolanin reducing the numerical value assigned to the traits of "Judgment/Common Sense" and "Decision Making/Problem Solving." (Id. ¶¶ 42-43.) The final value calculated by Wolanin was 6.25; therefore, he also found Rosiji to be psychologically unfit to be a Police Officer. (Id. ¶ 44.)

By letter dated October 14, 2009, Ramsey notified Rosiji that MPOETC would not certify him as a Police Officer and he could no longer be employed as a Philadelphia Police Officer. (Id. ¶ 45.) On October 29, 2009, Ramsey demoted Rosiji from the Police Officer position to the position of Police Reports Control Clerk at an annual salary of $27,809, which is $27,749 per year less than he had been earning as a Police Officer. (Id. ¶ 46.)

On October 17, 2011, Rosiji filed a Complaint in this matter. After Motions to Dismiss were filed by some of the Defendants, Rosiji filed an Amended Complaint on December 8, 2011, alleging the following: Count I - 42 U.S.C. § 1983 - Denial of Property Without Due Process of Law against the City and Ramsey; Count II - Breach of Contract against the City; Count III - Breach of Contract against Thomas; Count IV - Breach of Contract against Wolanin; and Count V - 18 Pa. C.S.A. § 9125 - Misuse of Criminal History Record Information against the City. In

5

light of the filing of the Amended Complaint, the outstanding Motions to Dismiss were denied as

moot on January 6, 2012.  All Defendants have moved to dismiss the Amended Complaint.  The

Motions to Dismiss will be denied.

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the

defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744,

750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, the Supreme Court of the United

States stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  550 U.S. 544, 555 (2007).

Following Twombly, the United States Court of Appeals for the Third Circuit ("Third

Circuit") has explained that the factual allegations in the complaint may not be "so undeveloped

that it does not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips

v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  Moreover, "it is no longer sufficient

to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of

[the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).

Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above

the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a

probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element.'"  Id.

(quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

After Iqbal, a two-part analysis is required when a district court evaluates a motion to dismiss for failure to state claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). The Third Circuit has set forth this two-part analysis as follows:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts.

Id. (citing Iqbal, 129 S. Ct. at 1949). After completing this analysis, if "'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

7

alleged - but has not show[n] - that the pleader is entitled to relief.'" Id. at 211 (quoting Iqbal,

129 S. Ct. at 1950).

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a

short and plain statement of the claim showing that the pleader is entitled to relief, not detailed

factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss,

the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and

must view any reasonable inferences that may be drawn therefrom in the light most favorable to

the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally,

the court must "determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Claims Against the City and Ramsey

#### 1.  Count I - 42 U.S.C. § 1983 Claim Against the City and Ramsey

Rosiji asserts a Section 1983 claim for denial of property without due process against the

City and Ramsey.[2]  He claims that neither the City nor Ramsey afforded him either a pre or post

termination process through which he could contest the accuracy, validity or conclusions reached

by Thomas and Wolanin regarding his psychological ability to exercise appropriate judgment and

restraint as a Police Officer before those results were reported to MPOTEC.  (Am. Compl.

---

[2]Title 42 U.S.C. § 1983 provides in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any

State . . . subjects, or causes to be subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured
by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,
or other proper proceeding for redress.

¶¶ 47-55.)  Rosiji also alleges that the City, Ramsey, Thomas and Wolanin knew that the use of the Police Applicant Standardized Interview Format would force him to divulge details of the events leading to his criminal charges which would reduce the numeric value of the interview on the Psychological Evaluation Summary Sheet causing him to fail the psychological evaluation. (Id. ¶¶ 50-51.)  Assuming that Rosiji's Section 1983 claim involves both procedural and substantive due process violations, the City and Ramsey argue that this claim should be dismissed because it is untimely under the applicable statute of limitations and Rosiji fails to state a plausible claim.  (City and Ramsey Mot. to Dismiss at 7-15.)

In his Response to the Motion to Dismiss, Rosiji clarifies that he only is asserting a procedural due process claim, not a substantive due process claim.  (Pl.'s Response to Mot. to Dismiss by the City and Ramsey at 16 n.5.)  Rosiji also argues that his claim is timely and plausible.

### a. Statute of Limitations

Claims arising under section 1983 are subject to a two-year statute of limitations.  Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993) (holding that Pennsylvania's two-year statute of limitations for personal injury actions applies to claims for violations of constitutional rights brought pursuant to 42 U.S.C. § 1983); see also Mumma v. High-Spec, Inc., 400 Fed. App'x 629, 631 (3d Cir. 2010) (same).  A cause of action accrues when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998); see also Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (stating that federal law governs the accrual of federal civil rights claims).

The City Defendants assert that Count I must be dismissed with prejudice because it was filed on October 17, 2011, which is more than two years after Ramsey's letter dated October 14, 2009, informing Rosiji that he would not be certified and could no longer be employed as a Philadelphia Police Officer.  (City and Ramsey Mot. to Dismiss at 11.)  Rosiji argues that the October 17, 2011 filing date is timely because the earliest he would have received the letter is October 15, 2009.  (Pl.'s Response to Mot. to Dismiss by the City and Ramsey at 11.)  Using the October 15, 2009 date, Rosiji asserts that two years from that date is Saturday, October 15, 2011.  (Id.)  Relying upon Federal Rule of Civil Procedure 6(a)(1)(c), which states that the computation of the last day of a time period excludes Saturday, Sunday, and legal holidays, Rosiji argues that he had until the following Monday, October 17, 2011, to timely file his Section 1983 claim.  See Fed. R. Civ. P. 6(a)(1)(c); see also Paige v. Holt, 439 Fed. App'x 169, 171 (3d Cir. July 15, 2011) (stating that Rule 6(a)(1)(c) sets forth that "if the last day of filing period is Saturday, filing period [is] extended until the following Monday").

Under the facts of this case, we agree with Rosiji's argument that his Section 1983 cause of action is timely.  The earliest date on which Rosiji could have received the letter learning of any alleged injury is Saturday, October 15, 2009.  Prior to the receipt of the letter by Rosiji, we find that he did not have reason to know that a possible constitutional violation occurred.  "As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues. . . . [T]he accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994); see also Zysk v. FFE Minerals USA Inc., 225 F. Supp. 2d 482, 487 (E.D. Pa. 2001).  Since two years after October 15, 2009, or

10

October 15, 2011, was a Saturday, the last day of the filing period is extended until the following Monday, or October 17, 2011, which is the date of the filing of the original Complaint.  See Fed. R. Civ. P. 6(a)(1)(c).  Thus, Rosiji's Section 1983 claim is timely.  The Motion to Dismiss by the City Defendants seeking dismissal of the Section 1983 claim as time-barred is denied.

### b.  Procedural Due Process

42 U.S.C. § 1983 provides an avenue for individuals to adjudicate violations of rights secured under federal constitutional or statutory law.  Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005) (citing Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979)).  In order to bring a valid claim under Section 1983, the following three elements must be alleged: (1) defendant acted under color of law; (2) defendant violated plaintiff's federal constitutional or statutory rights; and (3) that violation caused injury to plaintiff.  Elmore, 399 F.3d at 281 (citing Sameric, 142 F.3d at 590.)  The City Defendants argue that Rosiji has failed to allege any violation of his federal constitutional or statutory rights as required by the second element.  Specifically, they argue that any expectation by Rosiji regarding his right to remain a Police Officer was governed by the terms of the negotiated Settlement Agreement, which did not provide a process to challenge the certification decision.  (City and Ramsey's Mem. Law Support Mot. to Dismiss Am. Compl. at 11-14.)

Rosiji asserts that the City Defendants violated the Fourteenth Amendment by failing to provide adequate procedural processes when depriving him of his asserted property interest in employment as a Philadelphia Police Officer.  (Pl.'s Response to Defs.' Mot. to Dismiss Am. Compl. at 14-16.)  He argues that from the date of his reemployment with the Philadelphia Police

11

Department through October 29, 2009 (the date he was assigned to the position of Police Reports Control Clerk), he "was employed by the City as a Police Officer, was paid the salary of a Police Officer, was subject to the rules and regulations of the Police Department and was covered by the terms of the [Collective Bargaining Agreement] between the City and the FOP which, like every contract between the City and the FOP, provided that a Police Officer may only be fired for cause." (Id. at 14.)  According to Rosiji, the City Defendants were required to afford him a pre-termination opportunity to be heard and a more extensive post-termination opportunity to contest the validity of the psychological evaluation process.  (Id. at 15.)

The following two-part inquiry is required in order to assess the validity of Rosiji's claim: (1) plaintiff's interests must fall within the Fourteenth Amendment's protection of life, liberty, or property; and (2) whether adequate procedural due process was accorded when plaintiff was deprived of that protected interest.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see also McDonald v. Pa. State Police, No. 09-442, 2009 WL 3241858, at *3 (W.D. Pa. Oct. 2, 2009); Speck v. City of Phila., No. 06-4976, 2007 WL 2221423, at *5 (E.D. Pa. July 31, 2007).  In the employment context, property interests arise only when a plaintiff has "more than a unilateral expectation of continued employment . . . [plaintiff] must have a legitimate entitlement to such continued employment." Elmore, 399 F.3d at 282.  "Property rights are established based on the state law governing the employment interest in question."  McDonald, 2009 WL 3241858, at *3; Speck, 2007 WL 2221423, at *5.  According to Pennsylvania law, public employees who are terminable at-will do not have a legitimate entitlement to continued employment.  Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003).

Municipal Police Officers under contract are not at-will employees because they cannot be terminated without a showing of just cause and a hearing.  McDonald, 2009 WL 3241858, at *3; Speck, 2007 WL 2221423, at *5.  According to 53 Pa.C.S.A. § 12638, "[n]o police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense." 53 Pa.C.S.A. § 12638.  Due to the just cause requirement imposed by 53 Pa.C.S.A. § 12638, courts have found that Municipal Police Officers possess a constitutionally protected entitlement to continued employment.  McDonald, 2009 WL 3241858, at *4; Speck, 2007 WL 2221423, at *5.  "[T]he hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause."  Richardson v. Felix, 856 F.2d 505, 509 (3d Cir. 1988).  Additionally, Rosiji states that the Collective Bargaining Agreement between the City and the FOP prohibits the termination of a Police Officer without just cause.  (Am. Compl. ¶ 16.)

Under the facts of this case, as set forth in the Amended Complaint, we conclude that it is premature to dismiss Rosiji's Procedural Due Process claim.  Quite simply, we cannot determine Rosiji's employment status given our limited scope of review regarding this Motion to Dismiss. The employment status of Rosiji according to the Philadelphia Police Department, the Collective Bargaining Agreement between the City and the FOP, as well as the Settlement Agreement between the parties, cannot be determined as a matter of law in the present factual setting. Following the standard for determining a motion to dismiss, it is plausible that Rosiji has a protected property interest in his continued employment as Police Officer with the Philadelphia Police Department.  Likewise, Rosiji has adequately pleaded that the City and Ramsey failed to afford him procedural safeguards before depriving him of his employment.  Accordingly, the

13

City and Ramsey's motion for dismissal of Rosiji's Section 1983 claim for procedural due process is denied because he has presented sufficient facts, at this stage of the litigation, to survive dismissal.

### 2.  Count II - Breach of Contract Claim Against the City

The City argues that Rosiji's breach of contract claim should be dismissed because he has independent federal causes of action to vindicate the alleged harms he suffered.  (City and Ramsey's Mem. Law Support Mot. to Dismiss Am. Compl. at 15-16.)  Rosiji asserts that the dismissal of his breach of contract claim is improper because it seeks damages for breach of the contract between himself and the City and the implied duty of good faith and fair dealing imposed by the contract, and does not seek to vindicate constitutional rights.  (Pl.'s Response to Mot. to Dismiss by the City and Ramsey at 17-18.)

"The issue of whether Plaintiff may state a breach-of-contract claim on the basis of an implied covenant of good faith and fair dealing is a question of state law."  Wardlaw v. City of Phila., No. 09-3981, 2011 WL 1044936, at *8 (E.D. Pa. Mar. 21, 2011).  To state a claim for breach of contract, Pennsylvania law requires a plaintiff to establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract [,] and (3) resultant damages."  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); see also J.F. Walker Co., Inc. v. Excaliber Oil Grp., Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).  There is a general duty of good faith and fair dealing in the performance of contracts in Pennsylvania; however, it clear that while this duty exists, it exists as part and parcel of a claim for breach of

contract, not as an independent cause of action.  See LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008).  In Pennsylvania, the courts have determined that the duty of good faith is not implied where "a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith." Agrecycle, Inc. v. City of Pittsburgh., 783 A.2d 863, 867 (Pa. Commw. Ct. 2001).

Rosiji's breach of contract claim will not be dismissed at this time.  Defendants are correct that the Third Circuit has established that under Pennsylvania law there is no duty of good faith and fair dealing that can be implied where adequate remedies under an established cause of action based on the same conduct are available to the plaintiff.  See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (under Pennsylvania law, "a party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to 'a claim for relief under an established cause of action'") (quoting Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 701-02 (3d Cir. 1993), *overruled on other grounds by* UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003)).  However, at this stage of the case, Rosiji sufficiently alleges the existence of the Settlement Agreement, as well as the breach of the duty imposed by it and resultant damages.  He successfully argues that his breach of contract claim should be permitted to move forward because he is attempting to vindicate the express rights set forth, as well as implicated, in the Settlement Agreement, as opposed to the alleged procedural due process rights he seeks to vindicate in his Section 1983 procedural due process claim.  Thus, at this stage, dismissal of Rosiji's breach of contract claim is premature, and will not be granted.  The City's Motion to Dismiss Count II is denied.

### C.  Count V - 18 Pa. C.S.A. § 9125 Misuse of Criminal History Records Information Claim Against the City

Count V of the Amended Complaint is based upon Pennsylvania's Criminal History

Record Information Act, 18 Pa.C.S.A. § 9125 ("CHRIA"), which provides in relevant part that

"whenever an employer is in receipt of information which is part of an employment applicant's

criminal history record information file, it may use that information for the purpose of deciding

whether or not to hire the applicant."[3] 18 Pa.C.S.A. § 9125(a).  Regarding an employer's use of

that information, "felony . . . convictions may be considered by the employer only to the extent to

which they relate to the applicant's suitability for employment in the position for which he has

applied." Id. § 9125(b).  Notably, 18 Pa.C.S.A. § 9125 "allows employers to consider, when

relevant in hiring decisions, convictions but not arrests."  Foxworth v. Pa. State Police, 228 F.

App'x 151, 155 (3d Cir. 2007).

Rosiji asserts that the City used criminal history record information other than a

conviction for a felony or a misdemeanor in deciding whether to hire him as a Police Officer

which is prohibited by CHRIA.  (Am. Compl. ¶¶ 95-98.)  The City moves for dismissal of Count

V arguing that Rosiji provided details regarding "criminal misbehavior" in response to questions

posed during the evaluation, and any action taken in response to those questions does not trigger

CHRIA's protections.  (City and Ramsey's Mem. Law Support Mot. to Dismiss Am. Compl. at

16-17.)  Rosiji asserts that the dismissal of his claim is improper at this early stage of the

proceedings because the facts alleged in the Amended Complaint adequately set forth a CHRIA

---

[3]"Criminal history record information" is "information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, information or other formal criminal charges and any dispositions arising therefrom." 18 Pa.C.S. § 9102.

16

violation by the City.  (Pl.'s Response to Mot. to Dismiss by the City and Ramsey at 18-20.)  The

City responds to Rosiji's contention by arguing that the inference required to be drawn from the

allegations in the Amended Complaint are unreasonable and do not plausibly suggest it is liable

for any violation under CHRIA.  (City and Ramsey's Reply Br. at 3-5.)

"Factual allegations must be enough to raise a right to relief above the speculative level"

and "sufficient to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly,

550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be

a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  Id. (citation omitted).

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. . . . Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of
> the line between possibility and plausibility of entitlement to
> relief."

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

At this stage of the pleadings, we must determine whether the factual allegations of the

Amended Complaint are sufficient to conclude that there is a plausible CHRIA claim.  We must

assume the veracity of the factual allegations of the Amended Complaint in making this

determination.  Iqbal, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of

the complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

17

rise to an entitlement to relief.")

Upon examination of the factual allegations of the Amended Complaint, we conclude that there are sufficient facts to set forth a plausible CHRIA claim.  It is unclear what factors were actually considered in the City's denial of hiring Rosiji as a Police Officer.  While the actions of the City in denying Rosiji employment as a Police Officer under other circumstances could be reasonable, especially given the fact that he admits to informing both the psychologists about his criminal charges after questioning, the factual allegations regarding the use of Rosiji's criminal history record information in the Amended Complaint support a  plausible claim that the information was used in deciding not to permit Rosiji to perform the duties of a sworn Police Officer.  Assuming the veracity of the factual allegations in the Amended Complaint, as we must, Rosiji sufficiently pleaded a plausible claim for a violation of CHRIA upon which relief could be granted.  Consequently, the City's Motion to Dismiss is denied with respect to Count V.

### B.  Claims Against Thomas and Wolanin

Count III is a breach of contract claim against Thomas.  (Am. Compl. ¶¶ 63-8.)  Count IV is a breach of contract claim against Wolanin.  (Am. Compl. ¶¶ 79-94.)  Rosiji's claims against both Thomas and Wolanin rest upon the premise that he was the intended beneficiary of the contract between Thomas and the City, as well as the contract between Wolanin and the City. (Am. Compl. ¶¶ 63-8, 79-94.)  Specifically, the claims rest upon the assertion that both the City and Thomas, and the City and Wolanin, understood that the only purpose of the contracts between them was to have Thomas and Wolanin conduct the MPOETC required psychological evaluations of Rosiji as required by the Settlement Agreement.  (Id.)  Rosiji asserts that he was

an intended beneficiary of the contract between Thomas and the City, as well as between

Wolanin and the City, since he has the greatest interest in the psychologists conducting accurate

and appropriate psychological evaluations due to the results of the performed evaluations being

critical to his employment as a Philadelphia Police Officer.  Since, according to Rosiji, neither

Thomas, the City, nor Wolanin argue that at the time of contracting they contemplated anything

other than providing Rosiji with an accurate and appropriate psychological examination, the

recognition of Rosiji as an intended beneficiary of the contract between Thomas and the City, as

well as the contract between Wolanin and the City, is appropriate to effectuate the intention of

the parties. Thomas and Wolanin assert that the Amended Complaint fails to allege facts showing

compelling circumstances to find it appropriate to recognize Rosiji as an intended beneficiary of

their contracts with the City.

       In Pennsylvania, "in order for a third party beneficiary to have standing to recover on a

contract, both contracting parties must have expressed an intention that the third party be a

beneficiary, and that intention must have affirmatively appeared in the contract itself." Global

Grp. Support, LLC v. Glazer Enters., Inc., 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008) (quoting

Scarpitti v. Weborg, 609 A.2d 147, 150 (1992)).  A narrow exception to this general rule has

been established by the Pennsylvania Supreme Court. Id.  The exception "[does] not alter the

requirement that in order for one to achieve third party beneficiary status, that party must show

that both parties to the contract so intended, and that such intent was within the parties'

contemplation at the time the contract was formed." Id. (quoting Burks v. Fed. Ins. Co., 883

A.2d 1086, 1088 (Pa. Super. Ct. 2005)).  In order to evaluate whether a contract designates a

third-party beneficiary, the Pennsylvania Supreme Court adopted the Restatement (Second) of

19

Contracts § 302.[4]  Id. (citing Guy v. Liederbach, 459 A.2d 744, 751 (1983)).  "Under this rule,
'[u]nless otherwise agreed between promisor and promisee, a beneficiary of a promise is an
intended beneficiary if recognition of the right to performance in the beneficiary is appropriate to
effectuate the intention of the parties.'"  Id. (citing Restatement (Second) of Contracts § 302(1)).
"The terms intended and incidental beneficiary used by the Restatement are more specific terms
for 'third-party beneficiary,' which is a short hand reference to intended third parties
beneficiaries who have the ability to enforce the agreement."  Id. (citing Chen v. Chen, 893 A.2d
87, 89 n.5 (2006)).

Since Rosiji has not alleged that the contract between the City and Thomas, and the
contract between the City and Wolanin, contained any explicit provisions benefitting him, he
must show some compelling circumstances indicating that the City and Thomas, as well as the
City and Wolanin, intended to benefit him at the time that the contracts between them were
formed.  See Scarpitti, 609 A.2d at 150-51.  Rosiji has plausibly alleged, at this early stage of the
proceedings, such circumstances.  He alleges that he is a third party beneficiary to their contracts

---

[4]Restatement (Second) of Contracts § 302(1) provides as follows:

Intended and Incidental beneficiaries
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a
> promise is an intended beneficiary if recognition of a right to performance in the
> beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to
> pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary
> the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

because he is the sole person intended to benefit from the contracts in light of his employment situation.  In other words, Rosiji successfully argues, at this time, that the contracts between the City and Thomas, and the City and Wolanin, benefit him.  It is noted that this Court is at a disadvantage without any written contract before it.  Utilizing what has been submitted by the parties regarding the contracts at issue leaves us with no choice, but to allow the breach of contract claims against Thomas and Wolanin to move forward.  Consequently, the Motions to Dismiss by Thomas and by Wolanin seeking the dismissal of Count III and Count IV are denied.[5]

## IV.   **CONCLUSION**

The Motion to Dismiss by Ramsey and the City is denied in its entirety.  At this early stage of the litigation, Rosiji has adequately pleaded plausible allegations to survive dismissal of Count I, Count II and Count V.  Regarding the motions by Thomas and Wolanin seeking dismissal of the breach of contract claims against them, they also are denied in light of the early stage of the litigation and the plausibility of Rosiji's claims as set forth in the Amended Complaint.

An appropriate Order follows.

---

[5]Thomas and Wolanin argue that Rosiji's breach of contract claim against them is actually a professional negligence claim.  (Mot. to Dismiss by Thomas at 18-22; Mot. to Dismiss by Wolanin at 14-15.)  Arguing that Rosiji is trying to get around the fact that any professional negligence claim would be untimely, and that he failed to properly file a Certificate of Merit as required by Pennsylvania Rule of Civil Procedure 1042.3(a), they assert that he is improperly asserting a breach of contract claim.  Rosiji responds by stating that he is not bringing a claim for professional negligence.  (Pl.'s Response Mot. to Dismiss by Thomas at 18; Pl.'s Response Mot. to Dismiss by Wolanin at 17.)  Rosiji points out that the relationship between himself and the psychologists did not create a doctor-patient relationship that would support a claim for professional negligence.  We analyze Rosiji's claims as breach of contract claims as set forth in the Amended Complaint.  In light of analyzing the claims as breach of contract claims, the arguments by Thomas and Wolanin regarding immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, et seq., which grants municipalities, municipal agencies, and municipal officers acting in their official capacity immunity from liability for all state law tort claims, are rejected.